UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JOYCE BURKLEY,** | NO. CV 06-46-MAN |
| Plaintiff, | |
| v. | MEMORANDUM OPINION |
| **MICHAEL J. ASTRUE,**[1] **Commissioner of the Social Security Administration,** | AND ORDER |
| Defendant. | |

Plaintiff filed a Complaint on January 4, 2006, seeking review of the denial by the Social Security Commissioner ("Commissioner") of Plaintiff's claim for Supplemental Security Income ("SSI"). On January 31, 2006, the parties consented to proceed before the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). The parties filed a Joint Stipulation on September 18, 2006, in which: Plaintiff seeks an order reversing the Commissioner's decision denying benefits and remanding the case for a new hearing; and Defendant requests that

---

[1] Michael J. Astrue became the Commissioner of the Social Security Administration on February 12, 2007, and is substituted in place of former Commissioner Joanne B. Barnhart as the Defendant in this action. (*See* Fed. R. Civ. P. 25(d)(1); Section 205(g) of the Social Security Act, last sentence, 42 U.S.C. § 405(g).)

the Commissioner's decision be affirmed.  The Court has taken the parties' Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed her application for SSI on October 3, 2003. (Administrative Record ("A.R.") 48-50.)  Plaintiff claims to have been disabled since December 11, 2001, due to heart problems, obesity, hypertension, problems with her left arm and hand and right leg, and diabetes mellitus.  (A.R. 19, 48, 63, 66, 70.)  She has past relevant work experience as a custodian.  (A.R. 18.)

The Commissioner denied Plaintiff's claim for benefits initially and upon reconsideration.  On March 22, 2005, Plaintiff, who was represented by counsel, testified at a hearing before Administrative Law Judge Walter Fisher ("ALJ").  (A.R. 264-84.)  On May 12, 2005, the ALJ denied Plaintiff's SSI claim, and the Appeals Council subsequently denied Plaintiff's request for review of the ALJ's decision.  (A.R. 5-7, 15-21.)

## SUMMARY OF ADMINISTRATIVE DECISION

In his May 12, 2005 written decision, the ALJ found that Plaintiff has not engaged in substantial gainful activity during the period at issue.  (A.R. 21.)  The ALJ found that Plaintiff has impairments consisting of status post coronary artery disease, status post coronary artery bypass grafting, obesity, hypertension, and diabetes mellitus, but that Plaintiff does not have an impairment or combination of

2

impairments listed in, or medically equivalent to an impairment listed in, Appendix 1, Subpart P, Regulation No. 4. (*Id*.) In addition, the ALJ found that Plaintiff was "closely approaching advanced age" pursuant to 20 C.F.R. § 416.963 at the time of the decision. (*Id*.) Further, the ALJ found that Plaintiff's excessive subjective complaints were not credible. (*Id*.)

In setting forth Plaintiff's residual functional capacity, the ALJ found that Plaintiff was limited to work at the "light" level.[2] (A.R. 21.) Based on this residual functional capacity assessment, the ALJ found that Plaintiff was unable to perform her past relevant work. (*Id*.) Relying upon Medical-Vocational Guideline Rule 202.13, the ALJ found that Plaintiff could perform other work in the national economy.[3] (*Id*.) Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act during the time period at issue. (*Id*.)

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). The Commissioner's decision must stand if it is supported by substantial

---

[2] "Light work" involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b).

[3] Rule 202.13 directs that a person who is "closely approaching advanced age," has a high school education, and is unskilled, is not disabled. 20 C.F.R. Pt. 220, App. 2.

1  evidence and applies the appropriate legal standards. <u>Saelee v. Chater</u>,
2  94 F.3d 520, 521 (9th Cir. 1996). Substantial evidence is "more than a
3  mere scintilla but less than a preponderance -- it is such relevant
4  evidence that a reasonable mind might accept as adequate to support the
5  conclusion." <u>Moncada v. Chater</u>, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." <u>Desrosiers v. Sec'y. of Health and Human Serv.</u>, 846 F.2d 573, 576 (9th Cir. 1988); *see also* <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039-40 (9th Cir. 1995). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence. *Id*. at 1041; *see also* <u>Morgan v. Comm'r. of the Soc. Sec. Admin.</u>, 169 F.3d 595, 599 (9th Cir. 1999); <u>Flaten v. Secretary</u>, 44 F.3d 1453, 1457 (9th Cir. 1995).

**DISCUSSION**

Plaintiff alleges one issue: she contends that the ALJ failed to consider properly her testimony regarding her limitations and impairments. (Joint Stip. at 3.)

**A.   The ALJ's Credibility Finding Constitutes Error.**

The Court will give great weight to the ALJ's credibility assessment. Anderson v. Sullivan, 914 F.2d 1121, 1124 (9th Cir. 1990); Brawner v. Secretary, 839 F.2d 432, 433 (9th Cir. 1988)(recognizing that the ALJ's credibility determination is to be given great weight when supported specifically). In rendering a credibility evaluation, the ALJ may consider: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Smolen, 80 F.3d at 1284. When an ALJ's decision rests on a negative credibility evaluation, "the ALJ must make findings on the record and must support those findings by pointing to substantial evidence on the record." Cequerra v. Secretary, 933 F.2d 735, 738 (9th Cir. 1991); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995)(the ALJ's findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony").

With respect to the evaluation of subjective symptoms, including the side effects of medications, the Social Security Regulations provide, *inter alia*, as follows:

> Since symptoms suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about

5

>your symptoms. The information that you, your treating or
>nontreating source, or other persons provide about your pain
>or other symptoms . . . is also an important indicator of the
>intensity and persistence of your symptoms. . . . Factors
>relevant to your symptoms, such as pain, which we will
>consider include: (i) Your daily activities; . . . (iv) The
>type, dosage, effectiveness, and side effects of any
>medication you take or have taken to alleviate your pain or
>other symptoms; . . . (vi) Any measures you use or have used
>to relieve your pain or other symptoms (e.g., lying flat on
>your back, standing for 15 to 20 minutes every hour, sleeping
>on a board, etc.); and (vii) Other factors concerning your
>functional limitations and restrictions due to pain or other
>symptoms.

20 C.F.R. § 416.929(c)(3).

In rejecting Plaintiff's claimed symptoms and limitations, the ALJ explained, as follows:

>[Plaintiff] also complained of hand and leg pain. As a
>result of her cardiac surgery with required transplantation of
>her right leg veins and her left arm veins for grafting during
>the surgery, [Plaintiff] developed keloids in these areas.
>[Plaintiff] complained of keloid pain with the use of her
>dominant left arm; but, her arm is neurologically and
>vascularly intact. [Plaintiff's] treating physician
>specifically noted that this is not considered a disabling

6

condition and that her overall prognosis is good with compliance with medication (Exhibit 1F/5).

. . . .

In determining that [Plaintiff] is capable of performing light exertional level work activity, the Administrative Law Judge has considered [Plaintiff's] excessive subjective complaints in accordance with 20 CFR 416.929 and Social Security Ruling 96-7p, and does not find them credible. [Plaintiff] has a history of hypertension; but her condition is stable (Exhibit 1F/18). Her blood pressure in October 2002 was measured at 130/78, which is still within normal range (Exhibit 1F/18). In addition, there is no showing of significant end organ damage, and medical progress notes of record do not show that she has had symptoms from the condition that would significantly interfere with sustained work activity. [Plaintiff] has not been hospitalized for severe complications of diabetes or hypertension. Further, the treatment records do not reflect medication side effects which adversely affect [Plaintiff's] ability to function. While [Plaintiff] is obese, there is no record of persistent joint problems due to her obesity. Despite [Plaintiff's] obesity, the December 2003 consultant internist concluded that her range of motion of the joints was well preserved (Exhibit 5F/5). [Plaintiff] is currently taking nitroglycerin; however, the medical evidence does not show any significant limits. Moreover, the record does not support her allegations of

> significant hand, shoulder and calf limits. In fact, it does not show any limits in this area, which was confirmed by [Plaintiff's] treating physician that her condition is not disabling and her prognosis is good.

(A.R. 19-20.)

Plaintiff contends that the ALJ failed to consider her claimed limitations, such as: requiring assistance due to pain in her arms; having fatigue, pain, weakness, and shortness of breath; needing to urinate frequently; being able to lift a maximum of only ten pounds; being able to perform household chores for up to three hours at most; and needing to rest twice daily for up to two hours due to fatigue. (Joint Stip. at 4, citing A.R. 72-74.) In addition, she contends that the ALJ failed to evaluate properly the side effects of her medication, which include headaches, back pain, dizziness, chest pain, and the need to urinate frequently. (Joint Stip. at 4, citing A.R. 75.)

In a November 10, 2003 note, Dr. Kimberly Reece, one of Plaintiff's treating physicians, stated:

> As a result of her cardiac surgery which required transplantation of her right leg veins and her left arm veins for use for grafting during her surgery, [Plaintiff] developed keloids (scarring) in these areas. She is left handed and the forearm has extensive keloid. She complains of keloid pain with use of that arm but the arm is neurologically and vascularly intact. She is left handed. Prior to loss of her

8

> insurance we were deciding upon follow-up evaluation for removal of the keloid versus steroid injections to the keloid. This is not considered to be a disabling condition. Overall prognosis is good with continued follow-up and compliance with medication.

(A.R. 91-92.) In addition to Dr. Reece's November 10, 2003 note, prior treatment records describe Plaintiff's keloid pain.[4]

By summarizing Dr. Reece's November 10, 2003 note as simply indicating that Plaintiff's keloid condition was not disabling and that her prognosis was good, the ALJ did not accurately characterize Dr. Reece's note. While Dr. Reece did indicate that Plaintiff's arm was "vascularly and neurologically intact" and her prognosis was good with medication, Dr. Reece's note also indicates that Plaintiff could not have the treatment that she most needed for this condition -- surgery and/or steroid injections -- due to a loss of insurance. That her keloids were not "disabling" does not mean that they did not limit Plaintiff's ability to perform work, especially as she was experiencing pain and numbness in her dominant hand due to this condition. Although they do not describe precisely the extent of limitations in her left arm due to the keloids, Dr. Reece's November 10, 2003 note and Plaintiff's treatment records -- which describe limited flexion and extension in

---

[4] (A.R. 108 -- July 30, 2002 progress note indicating that Plaintiff "does not feel able to [perform full-time] employment [due] to pain and spasm [secondary to] keloid [pain]," which affects her flexion and extension of her dominant left hand, and she was tight on flexion of her wrist and extension of her elbow; 110 -- July 16, 2002 progress note indicating that Plaintiff was taking Tylenol 3 and was experiencing pain secondary to her keloids; 220-21 -- September 19, 2003 progress note indicating left arm parasthesia and numbness.)

9

Plaintiff's left wrist and elbow, as well as pain and numbness in her left arm -- indicate that Plaintiff may have had additional limitations pertaining to the use of her upper left extremity.

In the December 1, 2003 report of Dr. Jamshid Tamiry, an internist who examined Plaintiff at the request of the Commissioner and upon whom the ALJ relied in assessing Plaintiff's residual functional capacity, Dr. Tamiry generally noted Plaintiff's forearm scar and described Plaintiff's range of motion as "within normal limits." (A.R. 197.) However, Dr. Tamiry did not discuss or investigate any symptoms or limitations that Plaintiff claimed in connection with her keloids, such as pain and numbness. Furthermore, it appears that Dr. Tamiry was not provided any treatment records, which, as detailed above, indicated limited flexion and extension, as well as pain and numbness in her left arm.[5] Thus, the Court cannot confirm that his report is a sufficient basis for the rejection of Plaintiff's claimed limitations and symptoms resulting from her keloids.

---

[5] *See* 20 C.F.R. § 416.917 ("[i]f we arrange for [a consultative] examination or test, . . . [w]e will also give the examiner any necessary background information about your condition."); Nalley v. Apfel, 100 F. Supp. 2d 947, 953 (S.D. Iowa 2000)("when a claimant is sent to a doctor for a consultative examination, all the available medical records should be reviewed by the examiner"). *See also* Hurstrom v. Barnhart, 233 F. Supp. 2d 1159, 1166 (S.D. Iowa 2002)("There is no indication that either [consultative physician] had access to any of the medical records which were available at the time of their examinations. . . . Even if Plaintiff told the consulting doctors that he had no limitations, these statements are not credible in light of the numerous laboratory reports showing that his blood sugar is out of control."); Ladue v. Chater, 1996 WL 83880, *5 (N.D. Cal. 1996)(requiring remand where "[t]he ALJ failed to conform to 20 C.F.R. § 404.1517 [the parallel provision to Section 416.917] requiring that the consultative examiner be provided with necessary background information regarding the claimant's condition [and] it appears from the record that the ALJ gave Dr. Mehta's consultative report considerable weight, even though Dr. Mehta was lacking important background information regarding plaintiff").

To the extent that Plaintiff also claims fatigue, resulting in severe limitations in her daily activities and daily naps, and shortness of breath in connection with her cardiac problems and hypertension and medication side effects, and the need to urinate frequently[6] due to medication side effects, the ALJ's reasons for rejecting these claimed symptoms and limitations, several of which are not even addressed in the ALJ's decision, fall short of being clear and convincing. Several of Plaintiff's claimed symptoms and limitations appear to be borne out by the treatment records, despite the ALJ's assertion to the contrary.[7] No physician has rejected directly these limitations and symptoms, and the ALJ's short-shrift rejection of them on the ground that the medical records do not provide a sufficient basis for them is neither adequate

---

[6] Although the treatment records note Plaintiff's pain and shortness of breath, there is no mention regarding Plaintiff's claimed side effect of frequent urination due to her medication. However, as this case is being remanded, the ALJ should reconsider this claimed limitation, as well.

[7] (A.R. 165 -- December 12, 2001 x-ray to test for shortness of breath, but showing "no acute abnormality"; 144-45 -- Dr. William Madrid's December 10, 2001 consultation report noting that Plaintiff has exercise-induced dyspnea and tightness in her chest due to left main coronary artery stenosis and would be prepared for coronary revascularization; 116 -- May 17, 2002 progress note indicating increased blood pressure and shortness of breath; 120 -- March 26, 2002 progress note indicating burning in chest and cough; 121 -- March 7, 2002 -- noting that Plaintiff complained of exertional dyspnea and muscular discomfort in the upper part of the chest; 122 -- February 26, 2002 progress note indicating chest tightness with rest or exercise; 179-80 -- April 23, 2002 emergency room report noting that Plaintiff had been experiencing parasternal chest pain for several days and diagnosing Plaintiff with unstable angina; 228-31 -- September 19, 2003 emergency room report indicating that Plaintiff was experiencing shortness of breath for several weeks and dyspnea on exertion and diagnosing her with hypertension out of control due to noncompliance with medication and diet.) Although Plaintiff at one point asked her physicians to allow her to return to work with no restrictions (A.R. 109), as the ALJ noted, the persistence of Plaintiff's symptoms and limitations shown by the record as a whole indicates that this statement of recovery was an isolated instance.

nor convincing. *See* Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975); 20 C.F.R. § 416.913(a)(1)(a decision regarding a claimant's medically determinable impairments should be based upon a determination made by an "acceptable medical source," such as a licensed physician).

Thus, because the ALJ's rejection of Plaintiff's claimed limitations and symptoms is not based on substantial evidence, it constitutes error. Because the record does not clearly show how these claimed symptoms and limitations, if credited as true, would impact Plaintiff's residual functional capacity, the case should be remanded for further development of the record.[8]

Accordingly, the ALJ's finding regarding the credibility of Plaintiff's claimed symptoms and limitations is reversed.

**B.   Remand Is Required.**

Here, remand is appropriate to allow the ALJ the opportunity to correct the above errors. *See* McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989)(remand appropriate to remedy defects in the record).

---

[8] *See* Brown v. Heckler, 713 F.2d 441, 442-43 (9th Cir. 1993)(Commissioner has an affirmative duty to develop the record, even if the claimant is represented by counsel); 20 C.F.R. § 416.912(e)(duty to re-contact treating physician); Thomas v. Barnhart, 278 F.3d 947, 956-57, 959 (9th Cir. 2002)(requirement in 20 C.F.R. § 416.912(e) that the Commissioner re-contact treating sources is triggered where the information from the treating sources is inadequate to make a determination regarding disability); *see also* 20 C.F.R. § 416.919a(b)(listing situations requiring a consultative examination, such as a conflict, inconsistency, ambiguity or insufficiency in the evidence).

12

## CONCLUSION

Accordingly, for the reasons stated above, the denial of benefits is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order. Judgment shall be entered reversing the decision of the Commissioner, and remanding the matter for further administrative action consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: August 23, 2007

/s/
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE